Good morning, your honors. May it please the court. The issue in this case is a fairly throughout the appeal of this case that the trial court made a fundamental grammatically incorrect interpretation of the provision involved, namely whether these boots are footwear of the slip-on type that is held to the foot without the use of laces, buckles, or other fasteners. By reason of that interpretation, the court then made a secondary, serious, reversible error by disregarding numerous material facts in issue that go to the very heart of the nature of this merchandise and whether it falls within the scope of the statutory term. I believe the first issue to take a look at here is whether the boots are footwear or not. Can you address that? Yes, your honor, I'm happy to. There's no question the boots are footwear. Our claim is that they are footwear. What's at issue in this case is whether they are within a subset of the category of footwear, namely footwear of the slip-on type, and if they are, that's where they're classified. If they're not, they fall into the other basket footwear classification that we claim, which is not disputed by the government and has never been in dispute in this case. So you're not arguing that the legal definition given to footwear under U.S. Customs law would negate a classification of boots being included? If I understand that question, there is a TD in this case that the government relies on and that the trial court relies on, and it's the only thing that the government has that supports its classification that says that a boot which can be pulled on is within the provision for footwear of the slip-on type. There's no authority for that. The government knows of no authority for it. It's made up. And I have to stress that in the very preamble to those guidelines, on page 136 of the appendix, the government says these definitions are provided merely as guidelines. They are not to be construed as customs rulings. So it comes down to a two-part question, a fundamental question in tariff classification. One, we have to decide the common meaning of the term footwear of the slip-on type. And once we've made that determination, then we have to decide whether the particular product before the court, in this case the boot, falls within the scope of that term. The government has really twisted our argument by saying that we're trying to write the word footwear out of the statute. We've never argued that. That's a straw man that the government put up and has been shooting darts at from the beginning of this case at the trial level. What's really happening here is the word of the slip-on type is being written out of the statute. Because if the government's interpretation is correct, and if the trial court's interpretation was correct, the phrase could very simply have been footwear that is held to the foot without the use of laces, buckles, or fans. So what's your response to U.S. Customs Treasury decision, the 9388 decision, that defines slip-on as including a boot which must be pulled on? And I looked at the exhibit that you sent in for us to take a look at, and it seems to me that that's a boot that must be pulled on to get on. It slips on, but you've got to pull on it. You have to pull it on. That's correct, Your Honor. So my response to the TD is, one, it's made of whole cloth. There's no support for that. If you go to the lexicographic authority, which is the ultimate source for determining common meaning, in no case, in no case that the government can cite or anyone can cite, will you find a boot defined as of the slip-on type. There's a consistent pattern when you look at all of the definitions in their entirety that shows boots are one category of footwear that extend above the ankle, and that shoes are a category of footwear that does not extend above the ankle. And when you go through each and every one of these definitions of slip-on, you will see the references to shoes, not boots. And in some cases, not only is the reference to shoes, but it is a reference in contradistinction to boots. So how do you view slip-on? Is it hands-free? If you have to use a hand or a finger, no longer slip-on? And the dictionary definitions show that. Obviously, we can classically think of a loafer like the ones I'm wearing right now. I can put them on without touching the shoe. But there are some tight shoes that would possibly be called a slip-on that you might have to whittle your foot into, and it might be a little more difficult. But certainly, not the kind of exertion that is necessary to putting a boot on, and these boots in particular. Because of their knit construction, they're very tight. They won't stay up if they're not tight. So you really have to yank them on. And as one of our witnesses has said in the depositions, there actually were complaints from customers that they're too hard to put on. But what about your citation as other slip-ons fall within the definition or other items? You cite to garments as also being slip-ons. I don't cite to it. The definitions do. The government, again, that's a red herring getting into garments. There's two things the definitions talk about. Garments and footwear and shoes. And not footwear, but they say shoes specifically. And in that context, there's no question that all of those authorities, backed up by the testimony of our witness that was not allowed by reason of the granting of summary judgment, that in no case can a boot fall within the category of footwear known as footwear of the slip-on type. That's a class or kind of merchandise. And in fact, the legislative history establishes very, very clearly that these are two separate categories. The Senate Finance Committee report leading to the NTN negotiations that resulted ultimately in the harmonized tariff system makes it clear and states in no uncertain terms that the final position of the U.S. is that there were separate categories for boots and slip-on footwear. So the two cannot be put together. Now, our job as lawyers and as government administrators is then to decide what is of the slip-on type. And I submit, respectfully, we have to look in that case only at whether the product is a shoe or a boot in the context of this case. Once you say it's a boot, frankly, that's the end of it. Because it doesn't, as a matter of law and common meaning, embrace that term. And that's why we're arguing not only should the case be reversed, but it should be reversed outright and not just remanded for trial. Even though a trial, which we hope to have happen here, would have expanded with evidence supporting the dictionary definition. And the courts have long, long allowed testimony that would have commercial input so as to show what is or is not intended in the term. So it is our position in this case that all of that evidence was precluded by the failure of the court to allow us to put on our case at trial and granting summary judgment in the face of a multitude, a multitude of material facts that would establish that under no circumstances in the industry would this boot ever be considered to be slip-on footwear. And the courts have allowed that kind of testimony, even getting to the question of the common meaning of a term. Even there. And secondarily, that testimony is extremely relevant to determining, once you determine what the term means, whether in fact the boot falls within the scope of that term. And that's at the heart of the error in this case. It's two parts. One is the misreading of the statute by the inclusion of the imaginary comma after that is that totally distorted the meaning of the provision. Judge Carman, it seems that he rejected your arguments on grammar, the interpretation of the classification due to grammatical error. But he really relies a lot on the treasury decisions. And if you have treasury decisions that have existed for a long period of time that clearly show and say that a slip-on is a boot which must be pulled on, why is that incorrect as a matter of law? Well, one, I strenuously think that we're giving entirely too much dignity to this, calling it a treasury decision, that it is like something that came down from the mount. It is something drafted by an individual or individuals who put out guidelines to their people as to how they think something should be classified. When I practice customs law and I write treasury decisions, I would rely on them and advise my clients to undertake business activity pursuant to that advice. Aren't the customs decisions more than just advisory opinions, or does the court look at them for evidence as to a particular circumstance? There are treasury decisions and there are treasury decisions. There are rulings and then there's informal advice. But the Supreme Court has said that they don't earn deference, right? I'm sorry, Your Honor? The Supreme Court has said that even customs rulings don't earn deference. That's exactly right, unless they're solid on it. There's nothing to support that statement. I'd like to save the rest of my time for rebuttal. Thank you, Your Honor. Ms. Farrell? Thank you, Your Honor. With me today is Mr. McManus of the Office of Chief Counsel for Customs. May it please the Court. Don't we have to look to industry practice in interpreting these classifications? Your Honor, we look to lexicons in interpreting classifications. Industry definitions, right? Definitions, be they in a regular dictionary or an industry dictionary, yes, Your Honor, to the extent they inform the common meaning of the words used in the statute. There's no discussion in this case that there's somehow some type of a commercial designation that's never been argued, that's never been briefed. I'm not sure that's true. I mean, they rely on these dictionary footwear definitions heavily, which seem to bear on this and which seem to support them. I mean, suppose the language of the classification were just footwear of the slip-on type. Would the government lose? No, the government would win, footwear of the slip-on type. On what basis would it win? Because footwear is defined as including both boots and shoes. Sure, but the question is whether a boot can be of the slip-on type. It absolutely can. And there's no support in any of these industry dictionaries that boots can be of the slip-on type, right? There is support in the dictionaries that boots can be of the slip-on type. Where? In the definitions that were used. Where? Which definition supports it? The definitions that were provided by Decker. Show me a specific definition that says you can have a slip-on boot. There are no definitions that use the words slip-on and boot in the same sentence. Okay, so what are you relying on? So what we're relying on is an understanding of the language that's used in the statute. No, but you said that the industry dictionaries supported you. Yes, because... Show me a definition that supports you in the industry. In the Record on Appeal, page 78, appendix 78, the definition of shoe is defined as an outer covering for the foot. What, are you saying that a boot is a shoe? Well, the word shoe is used synonymously with boot or any covering. People will... Wait, wait, wait, where is it used synonymously with boot? When you talk about a covering of a foot, anything that covers the foot, footwear, anything that covers the foot is a shoe. Where does it say that a boot is a shoe? Well, a boot covers the foot, and therefore it fits within the definition of covering of the foot. So the word shoe at times is used broader than just what we understand to be a moccasin or a loafer or a pump. If it covers the foot, there are times it's called a shoe. So if this definition said shoe, what you're saying is we should read this definition as though it said shoe of the slip-on type? Your Honor, yes. We should look at the statute to see what specific language was actually used here. What was used was footwear, and as Counsel for Deckers concedes today and has conceded all along, there is absolutely no question that footwear includes both shoes and boots. Sure, the question is whether you can have boots of the slip-on type. So now the next question is, we have footwear of a slip-on type. Congress has drafted very specific language here. It said footwear of a slip-on type, which means boots and shoes and some other things that go on the foot of a slip-on type. Congress specifically did not use the word slip-on as a noun. It used it as an adjective. So when you come into this provision, you get footwear, which is a broad term, shoes and boots, and then you get to slip-on. There is a definition for slip-on as a noun.  Congress chose not to use that word as a noun, and that is informing the court it doesn't want to limit this provision to shoes that are pumps, moccasins, loafers. If it did, it would have used the word slip-on as a noun. It didn't. What is your support for the notion that where they didn't use it as a noun, it means something different, that slip-on means something different? Well, Your Honor, as this court has said time and again, when one interprets a statute in classification, we go to the common meaning of the words. Here, as we're going through this provision, we see the use of the word slip-on. It is not a noun. It's an adjective. So you turn to the definition of slip-on as an adjective, which is what the trial court did, and indeed, which is what Decker's counsel had. What's the definition of slip-on? Definition of slip-on as an adjective. Don't interrupt. Don't interrupt. Where is the definition of slip-on as an adjective? It can be found at page 13 of the Decker's Blue Brief and on page 14 of the Decker's Blue Brief. Talk about shoes, right? Yes. What does it limit it to shoes? And once again, shoes here is not defined, and as we recall, shoes were defined in the industry dictionary as covering of a foot. So here is, especially of shoes, things that cover feet or clothes, things that cover the body. And the first definition on page 13 says, especially of shoes or clothes, having no or few fasteners and therefore able to be put on and taken off quickly. The second definition that uses slip-on as an adjective can be found at page 14 of the Blue Brief. And what it says is easily put on or taken off as shoes without laces or a garment to be slipped on or off over the head. And again, since shoes have been defined as covering for feet, and since covering for feet include boots, we can also include boots here. I thought you'd stipulated that these weren't easily slipped on and off. Well, what the next... Isn't that true? Yes, yes it is. But the next provision is what is it to be slipped on easily, on and off. Congress has told us what that is. That is without laces or buckles or other fasteners. That is to be held to the foot without laces or buckles or other fasteners. Congress recognized that when it broadened the term footwear of the slip-on type and chose to use the word... Well, when one interprets what Congress has actually written in the statute. You have to go to the common meaning of the words and work your way through them. Footwear, broad, boots and shoes. If this provision were limited to shoes only, it would have been so simple to simply say shoes of the slip-on type. That are adhered to the foot without lace. The word shoes is in this provision. Congress has used the word shoes and boots in chapter 64. So that means... Let's say on page 18 of your brief you say Decker's is correct. The focus of these definitions is the ease and speed with which a shoe or garment can be slipped on or off or put or taken on or off. Now if you combine that with your concession that these particular boots are not easily slipped on and off, doesn't that sort of sink you? No, your honor, it doesn't. Why not? Because what it means to be taken easily on and off is further informed by the phrase that is adhered to the foot without the use of laces or buckles or fasteners. What makes something difficult or not easy to get on and off would be having to lace it all the way up and then unlace it. Having to shut down a bunch of buckles across the top of it. Having to pull a zipper all the way up. One of the definitions that the court uses in its opinion references the fact of clothing. One type of clothing that's considered a slip-on is a woman's girdle. There's no question that a woman's girdle is not easily slipped on and off because if it were, it wouldn't do its job which is to control and to compress in the body. The fact that girdles are considered a slip-on garment informs what the word slip-on means. Congress has used very specific language here. It has not limited itself to a slip-on shoe. It has used slip-on type. Slip-on being an adjective. The trial court did this. The trial court went out to find out what is it to be slip-on. To be slip-on is to be easily on and off but in light of the fact that girdles are also considered amongst that and that gloves that you pull onto your hands, you don't want them loose, they fall off. Those things are also in the opinion from the trial court. Those are difficult to get on. What is it then? When we're looking at the meaning of slip-on, what does that mean when it is an adjective? What does it mean? It means easy to get off. In other words, that is that it doesn't have fasteners. It doesn't have buckles. It doesn't have laces that you've got to go through all the trouble. You may have something tight that you're pulling on that's difficult. When you pull on the Decker's classic boot, you may have to pull a little bit depending on your foot, but you're not going to have to buckle it down, you're not going to have to lace it up, and you're not going to have to put on any other type of fastener. It's going to stay adhered to your foot. You're saying you're taking back what you said on page 18 of the brief? Decker's is correct that the focus of these definitions is the ease and speed with which a shoe or garment can be slip-on or off. Well, there's no question that the focus of those definitions is that, but the next question, the analysis doesn't stop there. The ease of getting on or off, well, what does that mean? If one had to classify goods for the ease of getting on and off, you would have to bring the good in and try it on and get it off every single time if we're going to fall into this category to know about ease. Congress has given us additional language to inform what that means to be a slip-on, and what it means to be a slip-on is that the ease is you are not burdened with lacing it, buckling it, or fastening it. That's what the meaning of this provision is. We can't leave out words. Courts have to take into consideration every single word in the statute and give meaning and value to that. Slip-on is not limited here to shoes. Congress told us that when it used the word footwear. It could have very easily used the word shoe, and it could have very easily used the word slip-on as in now and told us. It could have just said slip-on shoes that are not adhered to the foot with the use of laces, buckles, or fasteners. It specifically didn't do that. One thing that the court had mentioned earlier during Decker's presentation was that, well, there's no deference that has to be given, right? I mean, there's no—just because there's the TD out there, the 93-88, that gives definitions to the industry, as Judge Rayner was noting when he was in practice, these were useful devices. In fact— The Supreme Court has said we don't give deference, right? The Supreme Court has said you can give them Mead deference, not Chevron deference, but you can if they're persuasive. Skidmore deference. Yes. If they're persuasive. Mead through Skidmore, yes. And indeed, in the Mead case— So we have to ask whether it's persuasive. Yes, and the trial court found it persuasive, and the reason the trial court found it persuasive was that when you looked at the list, the concept of a pull-on boot, well, that's consistent with the word slip-on when it goes and is used for a girdle. When you're pulling a girdle on, you have to pull hard to get it on for it to do its job. A boot, you want that boot to be pulled on. That's what happens with boots. That's a normal thing for a boot. You pull them on when you're riding on a horse. You pull them on, you don't want the boot flapping around. It'll get caught up under the saddle if you have like a large pirate type of boot that's flapping around. That's not useful. These are pulled on. But the definitions, as the trial court, in its opinion, recognized, those definitions are found. They're pulled together and they're put in one place to inform the public, the importing public, to have an idea of how we're defining things. In the Mead decision, specifically, the court recognized that you can, if it's longstanding—it's been around since 93—if it's consistent with definitions, clearly it is. I don't know what I mean, clearly it is. That's the problem. It's not consistent with the definitions. It is consistent with the definitions. The definitions don't necessarily include pull-on boot as a slip-on. You don't find anything out there that says pull-on boots are slip-ons. But footwear, which includes boots, and the concept of a slip-on, just means that you're doing it without fasteners, laces, or buckles. That's what the statute says. That's what this classic Ugg boot, that's what it does. You pull it on, it has no fasteners, it has no buckles. And as for the final portion of the court's decision, there was discussion from Deckers that somehow the court has miraculously stuck in a comma. The court got that right under Strunk and White, the very book that's cited by Deckers. They got it right because that is a relative clause. Relative clauses that begin with that. I see my time is up, Your Honor, if I might finish the sentence? You can finish the sentence. Thank you, Your Honor. Relative clauses that begin with that cannot have a comma. There was a comma in front of the that here. The court, to give meaning to the statute consistent with Congress's intent, gave another comma, that is, i.e. So it would be consistent with Strunk and White. Thank you. Thank you, Your Honor. Your Honor, if I may, the question asking the government where there is support for footwear of the slip-on type embracing boots. The sole definition that the government has turned us to on page 78 of the appendix, they only look at half of that definition. It says shoe covering for the foot. The word is commonly used in the United States as an inclusive term for lower cut type footwear. It distinguishes boots by saying higher cut types are called boots. So this definition that they rely on itself exposes the bankruptcy of the statutory interpretation that's being urged on the court. Secondly, the term is slip-on type. Congress used that. It's a word of honor. It means a class or kind of merchandise. And we can avoid, if we look at that term in its proper sense, getting into subjective determinations of whether or not the boot is that easy to get on or not easy to get on. We look at what the industry considers a slip-on type. And again, the evidence which we would have put in if we went to trial would have shown the industry does not consider boots to be of the slip-on type. The simple fact of the matter is in this statutory framework, you have to determine when, as a matter of law, what is the meaning of of the slip-on type. And then we look at the merchandise, and then we have to determine if it is of the slip-on type, does it also have or does it not have fasteners? If it does have fasteners, it is out, even if it is of the slip-on type. So Congress further restricted the term for whatever reason to include only those that have no fasteners. Secondly, the argument is made that Congress could have used the word shoe instead of footwear. There are numerous instances where specific categories of footwear, such as sandals and other boots, are referred to as footwear, not as boots, not as sandals. So Congress in some cases, yes, does use individual terms, but these statutes have been drafted by many, many people. And in different contexts, they've used footwear in a generic sense and then further limited by definition and subsets of which there are numerous ones in this statute. Lastly, on the issue of deference for this ruling, there's two things. One, this isn't even up to Meade standards, because in its very explicit terms, it is not a ruling. They're saying it's not a ruling. It's just a guideline. And to get into Meade issues, you have to at least have a ruling. And then, as this court held in the Warner-Lambert case to be cited in the brief, the issue is then whether it's persuasive. And in this case, it's not. I thank you, Your Honor. I see my time is up. Thank you, Mr. Gill. Thank both counsel. The case is submitted.